UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **COREY MARQUEE ADAMS (#357624)** | **CIVIL ACTION** |
| **VERSUS** | |
| **BURL CAIN, ET AL.** | **NO. 13-0530-BAJ-RLB** |

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Signed in Baton Rouge, Louisiana, on August 11, 2014.

                                                 **RICHARD L. BOURGEOIS, JR.**
                                                 **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

COREY MARQUEE ADAMS (#357624)                    CIVIL ACTION

VERSUS

BURL CAIN, ET AL.                                      NO. 13-0530-BAJ-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion for Partial Summary Judgment (Rec. Doc. 8). This Motion is opposed.

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Warden Burl Cain, Ass't Warden Kenneth Norris, Dr. Jason Collins, Dr. Randy Lavespere and Dr. Hal McMurdo, complaining that the defendants have violated his constitutional rights through deliberate indifference to his serious medical needs, specifically through a failure to provide him with an assignment to a bottom bunk and appropriate duty restrictions in light of his medical condition.

The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's pertinent Administrative Remedy Proceedings, a certified copy of the plaintiff's Master Prison Record, and the affidavit of Rhonda Z. Weldon.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party

moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, the plaintiff alleges that on the evening of August 23, 2012, he was sitting in his assigned top bunk in his cell when he experienced a dizzy spell and fell forward, suffering serious injuries as a result, including a gash under his left eye, a broken nose and a busted lip, as well as injuries to his neck, back, left shoulder and head. He was transported by

ambulance to the LSP emergency room and, later that night, was returned to his cell and to his assigned top bunk. The plaintiff asserts that he has an extensive medical history of having suffered bouts of severe dizziness, which dizziness is the result of a brain injury and surgery he allegedly sustained in 1998. According to the plaintiff, LSP medical personnel were aware of his prior brain injury and condition, and he asserts that it was because of that injury that the LSP medical department assigned him to an out-of-field duty status upon his arrival at the prison in 2003. Notwithstanding, the plaintiff complains that the defendants failed to issue him a bottom bunk assignment prior to the referenced fall in August, 2012, and have failed to provide one since. In addition, the plaintiff complains that the defendants have wrongly determined that he is not entitled to a duty status which restricts him from working in the LSP fields. As a result, he is being required to perform work which endangers his health, causes pain, and is beyond his physical capabilities.

The defendants first assert in the instant motion that certain of the plaintiff's claims are subject to dismissal for failure to exhaust administrative remedies. In this regard, pursuant to 42 U.S.C. § 1997e, the plaintiff was required to exhaust administrative remedies available at the prison prior to commencing a civil action in this Court with respect to prison conditions.[1] This provision is mandatory and applies broadly to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures. *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). Specifically, not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical

---

1. 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" *Johnson v. Johnson*, *supra*, 385 F.3d at 516, *quoting Porter v. Nussle*, *supra*, 534 U.S. at 525. Further, the degree of specificity necessary in a prisoner's grievance should be evaluated in light of this intended purpose. *Id.*

Upon a review of the plaintiff's pertinent administrative grievances, *i.e.,* the grievances which he filed relative to the claims asserted in this proceeding, the Court concludes that the defendants' arguments relative to exhaustion should be denied. Specifically, although the defendants are correct that the plaintiff failed to complete the administrative process relative to two of the grievances that he filed, *i.e.,* Grievances Nos. LSP-2012-3203 and LSP-2012-3795, and so failed to exhaust administrative remedies relative to the claims asserted therein, the Court finds that the plaintiff adequately asserted his claims in the two grievances that he did complete through the administrative process, *i.e.*, Grievances Nos. LSP-2012-2843 and LSP-2012-3718. In the first of these, Grievance No. LSP-2012-2843, the plaintiff asserted that "[i]t has long been medically evident/recorded" in his LSP medical records that he sustained a brain injury in 1998 and underwent surgery at that time, and that he suffers from "numerous seizures, blackouts and extreme dizziness." The referenced grievance also asserted that, as a result of a bout of dizziness on August 23, 2012, he suffered serious injuries in the referenced fall from his assigned upper bunk on that date. Finally, the grievance asserted that, while receiving medical treatment at the LSP emergency room after the fall, the plaintiff overheard an emergency medical technician state, upon reviewing the plaintiff's medical records, that the plaintiff "should have long been issued a medical, bottom bed duty status." Notwithstanding, prison officials returned him to his

assigned upper bunk after the incident, and he prayed in the grievance for the issuance of "a permanent bottom bed duty status."  The plaintiff also asserted in the referenced grievance that he was suffering pain from an old back injury, that the medications prescribed for that condition were not effective, that a temporary limited duty status was due to expire on October 15, 2012, and that he should be issued a "permanent out of field ... duty status to accomodate [sic] my injuries."  In the plaintiff's second Grievance, No. LSP-2012-3718, the plaintiff complained regarding a visit to the hospital clinic on December 3, 2012, at which time he was evaluated by defendant Dr. McMurdo and during which he attempted to discuss his continuing back and shoulder pain, his need for a limited out-of-field duty status, and his attempts, since September, 2012, to have his duty status re-evaluated.  According to the plaintiff, Dr. McMurdo refused to address the plaintiff's duty status, and the plaintiff requested in the referenced grievance that he be "issued a no bending, lifting, carr[y]ing or use of left arm duty status."

Based on the foregoing recitation, the Court concludes that the referenced grievances adequately presented the plaintiff's claims asserted in this lawsuit that prison officials have exhibited deliberate indifference to his serious medical needs by failing to assign him to a bottom bunk, either prior to his fall on August 23, 2012, or thereafter, and by failing to provide him with an appropriate out-of-field duty status in light of his continuing complaints of back, neck and shoulder pain.  Although the defendants contend that the plaintiff's failure to identify the individual defendants by name in the referenced grievances mandates a conclusion that the plaintiff's claims against them are unexhausted, it has never been an absolute requirement that a grievance identify by name all of the persons who are later named as defendants in an inmate's lawsuit.  *See Johnson v Johnson, supra*, 385 F.3d at 522 (noting that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular

official that he may be sued"). Whereas, as a practical matter in certain instances, a grievance will be required to identify the persons who are connected with a problem in order that prison administrators may have a fair opportunity to address same, *see id.*, in other instances a grievance may be sufficient if it provides "available information ... that would permit an investigation of the matter." *See id.* at 517 (citing with approval a case from another Circuit which concluded "that a prisoner who knew only that he had not received prescribed medical equipment had exhausted his claim, notwithstanding that his grievance did not name anyone"). Applying these principles, the Court concludes that the plaintiff's grievances in this case were sufficient to assert the claims presented in the instant lawsuit, and that the defendants' exhaustion argument should be rejected.

The defendants next contend that they are entitled to qualified immunity in connection with the plaintiff's claims asserted against them. Specifically, the defendants contend that the plaintiff has failed to allege or show the existence of a genuine issue of disputed fact relative to their violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The

assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[2]

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court finds that the defendants' motion should be granted, but only in part. Specifically, the Court finds that the plaintiff has failed to sufficiently allege or show that defendants Burl Cain and Kenneth Norris have had any direct or personal involvement in the events alleged so as to support a finding of potential liability against them. With regard to the remaining defendants, however, as discussed below, the Court finds that there remain disputed issues of fact in this case, both as to the plaintiff's asserted need for an assigned bottom bunk and for appropriate work limitations.

First, with regard to defendants Cain and Norris, the plaintiff has failed to allege sufficient personal involvement on the part of these defendants in the events complained of. In this regard, in order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and

---

2. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that these defendants are responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

Applying the foregoing standard, it appears that the plaintiff has failed to sufficiently allege that defendants Cain and Norris have undertaken any action which may be characterized as a violation of the plaintiff's constitutional rights. Specifically, the plaintiff identifies these defendants as the "Head Warden" and "Assistant Warden of Health Services" at LSP, respectively, and he makes no factual allegations whatever that these supervisory defendants have had any personal involvement in determining the plaintiff's appropriate bunk assignment or duty status. Instead, the plaintiff's only factual allegation relative to these defendants is that he made verbal and written requests to them after the incident "through grievance complaints," but the defendants failed to take appropriate action in response. Notwithstanding, to the extent that this allegation may be interpreted as complaining of the actions of these defendants in handling the plaintiff's administrative complaints, this claim is not one of constitutional dimension. The plaintiff does not have a constitutional right to have his administrative claims properly

investigated or favorably resolved, *Mahogany v. Miller*, 252 Fed. Appx. 593 (5th Cir. 2007), and there is no procedural due process right inherent in such a claim. *See Geiger v. Jowers*, 404 F.3d 371, 373-74. Accordingly, the plaintiff's claim asserted against defendants Cain and Norris is without legal or factual foundation, and in the absence of any allegation regarding the direct involvement of these supervisory officials in the events complained of, these defendants are entitled to summary judgment as a matter of law in connection with this proceeding.

Turning to the plaintiff's claim asserted against the remaining defendants, Drs. Jason Collins, Randy Lavespere and Hal McMurdo, the Court finds, in contrast, that the plaintiff's allegations are sufficient to overcome the assertion of qualified immunity. In this regard, an inmate who seeks to assert a claim regarding a failure to attend to his medical needs and/or a failure to protect his health and safety under § 1983 must be able to show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue. *Estelle v. Gamble, supra*. Nor do negligence, neglect or medical malpractice give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994). As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Applying the foregoing standard, numerous courts have recognized that deliberate medical indifference may be found when an inmate who is known to be suffering with a seizure disorder is not assigned to a lower bunk. For example, as noted in *Lewis v. Endell*, 2008 WL

4866316, *6 (D. Nev. Nov. 7, 2008):

> Prison officials have been dealing with lower-bunk restrictions for many years now. *See, e.g., Estelle [v. Gamble, supra,]* 429 U.S. at 99 (doctor ordered prisoner moved from upper to a lower bunk to avoid injury). The reason for such restrictions are obvious: a prisoner could be seriously injured if he were to fall from the top bunk. This is precisely what occurred in this case. Moreover, a reasonable officer would understand this potential risk of serious injury. If Plaintiff's contentions are true, Defendants were deliberately indifferent when they refused to reassign him to a lower bunk, even though he was currently being treated for seizures, and when they housed him on an upper bunk for seven months. Accordingly, Defendants are not entitled to qualified immunity on this claim.

*See also Friedman v. Sowers*, 2010 WL 5391499 (D. Md. Dec. 22, 2010) (summary judgment denied where there was a genuine issue of material fact "[w]hether the failure to provide Plaintiff with a lower bunk to accommodate his physical disability was done with the knowledge that there was a valid medical order in existence"); *Shaw v. Gaetz*, 2010 WL 3603145 (S.D. Ill. Sept. 7, 2010) (no dismissal of claim as frivolous where inmate with a medical restriction for a lower bunk was "forced to utilize upper bunk" when he was placed in a cell with a co-inmate who was already using the lower bunk); *Terry v. McBride*, 2009 WL 3150252 (S.D. Cal. Sept. 28, 2009) (motion to dismiss denied where plaintiff alleged that he informed the defendant of his need for assignment to a lower bunk because of the risk of falling and that this need could be verified in the plaintiff's medical file, but the defendant refused to check the file); *Perdue v. Dreyer*, 2008 WL 4826260 (W.D. N.Y. Nov. 5, 2008) (motion for summary judgment denied where, "[a]ccepting plaintiff's allegations as true for the purposes of this motion, defendants were aware of the potential for plaintiff to be injured by a fall from his upper bunk but failed to take action to prevent such an occurrence"); *O'Neal v. Voong*, 2008 WL 110964 (E.D. Cal. Jan 9, 2008) (no dismissal of claim as frivolous where inmate alleged that defendants "forced him to sleep in an upper bunk in disregard of his medical needs"). *Cf., Eubanks v. Jordan*, 2008 WL 5068656 (5th Cir. Nov. 26, 2008) (upholding a grant of summary judgment to the defendants where there was

"no evidence that Defendants knew that failing to assign Plaintiff to a lower bunk was substantially likely to result in his injury"); *Hampton v. Killinger*, 91 F.3d 138 (5th Cir. 1996) (same). In addition, it has long been recognized that prison work requirements may constitute an Eighth Amendment violation when prison officials knowingly compel an inmate to perform physical labor which is beyond his strength or which constitutes a danger to his life or health, or which is unduly painful. *See Williams v. Wooten,* 119 Fed. Appx. 625, 626 (5th Cir. 2004), *citing Howard v. King*, 707 F.2d 215, 219 (5th Cir. 1983).

In response to the plaintiff's contentions, the defendants have asserted in the instant motion that the plaintiff never advised them, prior to the incident complained in August, 2012, of his alleged brain injury and surgery or of his need for a lower bunk. As a result, they assert that they may not be found to have been deliberately indifferent to a serious risk of which they were not subjectively aware. In addition, the defendants assert that the plaintiff has been evaluated by health care professionals subsequent to the referenced incident and has been determined both not to require a lower bunk assignment and to have an appropriate duty status. Notwithstanding, the defendants have not produced competent evidence adequate to support these assertions. Specifically, the defendants have not produced certified copies of the plaintiff's medical records or any affidavits to support these factual representations. Although the defendants have produced certified copies of the plaintiff's pertinent administrative remedy proceedings, and although this documentation includes purported excerpts from the plaintiff's medical records, summaries of his medical treatment, and the conclusions of prison administrators, a proper foundation has not been laid for a substantive consideration of the matters addressed in these documents, and they are not alone sufficient to establish the assertions made. *See, e.g., Bryant v. Keffer*, 2011 WL 7112626, *3 (W.D. La. Dec. 2, 2011) (refusing to consider, on motion for

summary judgment, an affidavit which included a summary of the plaintiff's medical treatment where the certified medical records were not introduced). Instead, the defendants should be required to produce copies of medical records that are themselves certified to be true and accurate, together with affidavits by one or more witnesses with personal knowledge, detailing the extent of any prior notice of the plaintiff's medical condition and purported need for a lower bunk assignment, detailing any subsequent evaluations and the medical basis for any subsequent determinations regarding his bunk assignment and duty status restrictions, and detailing the personal involvement of the named defendants in the events alleged. In the absence of competent evidence in this regard, the defendants have not established the viability of their qualified immunity defense and so are not entitled to summary judgment in connection with these claims.

## RECOMMENDATION

It is recommended that the defendants' Motion for Partial Summary Judgment (Rec. Doc. 8) be granted in part, dismissing the plaintiff's claims asserted against defendants Burl Cain and Kenneth Norris, with prejudice, and that this matter be referred back for further proceedings in connection with the plaintiff's claims of deliberate indifference asserted against defendants Jason Collins, Randy Lavespere and Hal McMurdo, in the defendants' individual capacities.

Signed in Baton Rouge, Louisiana, on August 11, 2014.

　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　**RICHARD L. BOURGEOIS, JR.**
　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**