UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

COREY MARQUEE ADAMS (#357624)                         CIVIL ACTION

VERSUS

BURL CAIN, ET AL.                                     NO. 13-530-JWD-RLB

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 26, 2016.

　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　RICHARD L. BOURGEOIS, JR.
　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**COREY MARQUEE ADAMS (#357624)**                        **CIVIL ACTION**

**VERSUS**

**BURL CAIN, ET AL.**                                                        **NO. 13-530-JWD-RLB**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the parties' cross-motions for summary judgment (R. Docs. 50 and 51).

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Warden Burl Cain, Ass't Warden Kenneth Norris, Dr. Jason Collins, Dr. Randy Lavespere and Dr. Hal McMurdo, complaining that the defendants have violated his constitutional rights through deliberate indifference to his serious medical needs, specifically through a failure to provide him with (1) an assignment to a bottom bunk and (2) appropriate duty restrictions in light of his medical condition.  Pursuant to an earlier Magistrate Judge's Report in this case (R. Doc. 16), approved by the assigned District Judge on September 30, 2014 (R. Doc. 23), the Court has dismissed the plaintiff's claims asserted against defendants Burl Cain and Kenneth Norris, with prejudice.

The plaintiff moves for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, excerpts from his medical and duty status records, and two (2) declarations signed "under penalty of perjury."  The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's medical records, certified copies of the plaintiff's Master Prison Record and Location Sheets, a certified

copy of LSP Directive No. 13.063 (relative to the LSP "Duty Status Classification System"), and the affidavits of LSP E.M.S. Supervisor Darren Cashio, Dr. Charles Barkmeyer, Dr. Michael Gamble, LSP Disciplinary Board Supervisor Melissa Butler, and defendants Dr. Hal MacMurdo, Dr. Randy Lavespere and Dr. Jason Collins.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air*

*Corp.*, *supra*, 37 F.3d at 1075.  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, the plaintiff alleges that on the evening of August 23, 2012, he was sitting in his assigned top bunk in his cell when he experienced a dizzy spell and fell forward, suffering serious injuries as a result, including a gash under his left eye, a broken nose and a busted lip, as well as injuries to his neck, back, left shoulder and head.  He was transported by ambulance to the LSP emergency room and, later that night, was returned to his cell and to his assigned top bunk.  The plaintiff asserts that he has an extensive medical history of having suffered seizures and bouts of severe dizziness, which conditions stem from a brain injury suffered in 1998 that resulted in surgery.  According to the plaintiff, LSP medical personnel have been aware of his prior brain injury and condition, and he asserts that, for this reason, the LSP medical department assigned him to an out-of-field duty status upon his arrival at the prison in 2003.  Notwithstanding, the plaintiff complains that the defendants have failed to thereafter maintain him with an assigned bottom bunk prior to the referenced fall in August, 2012, and have failed to provide one since.  In addition, the plaintiff complains that the defendants have wrongly determined that he is not entitled to a duty status which restricts him from working in the LSP fields.  As a result, he is being required to perform work that endangers his health, causes pain, and is beyond his physical capabilities.

In response to the plaintiff's assertions, the defendants contend that they are entitled to qualified immunity in connection with the plaintiff's claims.  Specifically, the defendants

contend that the plaintiff has failed to present evidence sufficient to show the existence of a genuine issue of disputed fact relative to their violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[1]

---

[1] The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial," the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court finds that the plaintiff's motion for summary judgment should be denied and that the defendants' motion for summary judgment should be granted. Specifically, the Court finds that the plaintiff has failed to present evidence sufficient to support a finding that the defendants have been deliberately indifferent to his health or safety, either by failing to assign him to a bottom bunk before or after his accident of August 23, 2012, or by failing to implement more limited work restrictions. The evidence in the record is to the contrary.

An inmate who seeks to assert a claim regarding a failure to attend to his medical needs and/or a failure to protect his health and safety under § 1983 must be able to show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue. *Estelle v. Gamble, supra*. Nor do negligence, neglect or even medical malpractice give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994). As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The same standard applies in connection with an inmate's work assignments. Specifically, prison work requirements may constitute an Eighth Amendment violation when prison officials knowingly compel an inmate to perform physical labor which is beyond his strength or which constitutes a danger to his life or health, or which is unduly painful. *See*

*Williams v. Wooten,* 119 Fed. Appx. 625, 626 (5th Cir. 2004), *citing Howard v. King*, 707 F.2d 215, 219 (5th Cir. 1983).

Addressing the foregoing standard first in connection with the plaintiff's contention that the defendants have failed to assign him to a lower bunk, either before or after his accident of August 23, 2012, numerous courts have recognized that deliberate medical indifference may be found when an inmate who is known to be suffering with a seizure disorder is not assigned to a lower bunk. For example, as noted in *Lewis v. Endell*, 2008 WL 4866316, *6 (D. Nev. Nov. 7, 2008):

> Prison officials have been dealing with lower-bunk restrictions for many years now. *See, e.g., Estelle [v. Gamble, supra,]* 429 U.S. at 99 (doctor ordered prisoner moved from upper to a lower bunk to avoid injury). The reason for such restrictions are obvious: a prisoner could be seriously injured if he were to fall from the top bunk. This is precisely what occurred in this case. Moreover, a reasonable officer would understand this potential risk of serious injury. If Plaintiff's contentions are true, Defendants were deliberately indifferent when they refused to reassign him to a lower bunk, even though he was currently being treated for seizures, and when they housed him on an upper bunk for seven months. Accordingly, Defendants are not entitled to qualified immunity on this claim.

*See also Friedman v. Sowers*, 2010 WL 5391499 (D. Md. Dec. 22, 2010) (summary judgment denied where there was a genuine issue of material fact "[w]hether the failure to provide Plaintiff with a lower bunk to accommodate his physical disability was done with the knowledge that there was a valid medical order in existence"); *Shaw v. Gaetz*, 2010 WL 3603145 (S.D. Ill. Sept. 7, 2010) (no dismissal of claim as frivolous where inmate with a medical restriction for a lower bunk was "forced to utilize upper bunk" when he was placed in a cell with a co-inmate who was already using the lower bunk); *Terry v. McBride*, 2009 WL 3150252 (S.D. Cal. Sept. 28, 2009) (motion to dismiss denied where plaintiff alleged that he informed the defendant of his need for assignment to a lower bunk because of the risk of falling and that this need could be verified in the plaintiff's medical file, but the defendant refused to check the file); *Perdue v. Dreyer*, 2008

WL 4826260 (W.D. N.Y. Nov. 5, 2008) (motion for summary judgment denied where, "[a]ccepting plaintiff's allegations as true for the purposes of this motion, defendants were aware of the potential for plaintiff to be injured by a fall from his upper bunk but failed to take action to prevent such an occurrence"); *O'Neal v. Voong*, 2008 WL 110964 (E.D. Cal. Jan 9, 2008) (no dismissal of claim as frivolous where inmate alleged that defendants "forced him to sleep in an upper bunk in disregard of his medical needs"). Notwithstanding, where there is no evidence to suggest that the defendants have consciously or callously disregarded a known risk of substantial harm to an inmate's safety, the Courts have failed to find liability on the part of the defendants. *See Eubanks v. Jordan*, 2008 WL 5068656 (5th Cir. Nov. 26, 2008) (upholding a grant of summary judgment to the defendants where there was "no evidence that Defendants knew that failing to assign Plaintiff to a lower bunk was substantially likely to result in his injury"); *Hampton v. Killinger*, 91 F.3d 138 (5th Cir. 1996) (same).

In response to the plaintiff's contentions, the defendants assert in the instant motion that the plaintiff never advised them, prior to the incident complained of in August, 2012, that he was suffering from seizures or that he was in need of a bottom bunk assignment. As a result, they assert that they may not be found to have been deliberately indifferent to a serious risk of which they were not subjectively aware. In addition, the defendants assert that the plaintiff has been evaluated and treated by health care professionals on many occasions, both prior to and subsequent to the referenced incident in August, 2012, and he has been determined not to require a lower bunk assignment.

Based on the evidence presented by the defendants, the Court finds that the defendants' motion is well-taken and that they are entitled to qualified immunity in connection with the plaintiff's claim. This evidence reflects that the plaintiff underwent brain surgery in 1998 in

Lafayette, Louisiana, and that he has since received substantial medical attention and treatment at LSP for numerous medical issues, including diagnoses of post-traumatic psychosis, bipolar disorder, major depressive disorder, paranoia, schizophrenia, and complaints of neck, shoulder and back pain.  *See* R. Doc. 51-6.  However, there is no indication in his medical records that he has specifically complained to any of the defendants regarding a history of seizures or of a need for a bottom bunk assignment.  In 2002 at the Elayn Hunt Correctional Center, the plaintiff was issued a duty status for a lower bunk assignment as a "seizure precaution."  Upon being transferred to LSP in 2003, the referenced duty status was maintained.  The plaintiff was thereafter referred, in 2004, for evaluation by an expert neurologist, Dr. Charles Barkemeyer, a consultant for the Louisiana Department of Corrections since 1986.  *See* R. Doc. 52.  Upon initial evaluation, the plaintiff reported intermittent cervical pain and residual intermittent light-headedness and headaches as a result of his prior head injury.  *Id.*  There was no report of epilepsy, however, and Dr. Barkemeyer did not prescribe any anti-convulsant medication or find any gross neurologic deficits at that time.  *Id.*  A brain CT scan was conducted in 2004 and was interpreted to reflect normal findings.  Dr. Barkemeyer continued to follow the plaintiff in 2005 and 2006 but ultimately discharged him from the neurology clinic in January, 2006, because, in his opinion, the plaintiff "had no residual deficits from the head injury."  *Id.*  Although the plaintiff had been issued a duty status for a bottom bunk in 2005 at LSP as a "seizure precaution," *see* R. Doc. 53-2, p. 10, the bottom bunk duty status was removed from the plaintiff's prison medical record in 2006 upon his discharge from the LSU neurology clinic.  *Id.*  At the time, the plaintiff was suspected to be malingering for a duty status.  *See* R. Doc. 53-23, p.3.  Dr. Barkemeyer attests in his affidavit that although he had the authority to recommend a

lower bunk assignment for the plaintiff in 2004, 2005 and 2006, he did not do so because it was his conclusion that the plaintiff had "no neurological deficits from the head injury." R. Doc. 52.

It is the sworn assertion of each of the defendants that the plaintiff never complained to them directly of a need for a bottom bunk assignment or requested the same prior to his accident in August, 2012. The plaintiff does not dispute this assertion but contends, instead, that the defendants were responsible for reviewing his medical records and implementing an appropriate plan to ensure his health and safety. He believes that due to the nature of his brain surgery in 1998, together with the noted history of seizures subsequent to that surgery and the implementation of "seizure precautions" several years prior, the defendants were aware of substantial risk of harm to the plaintiff.

Finally, in December, 2014, a subsequent "extremely thorough" re-examination of the plaintiff by Dr. Barkemeyer similarly revealed no gross neurological deficits and no evidence of cervical or lumbar radiculopathy, and Dr. Barkemeyer was unable to confirm the veracity of the plaintiff's complaints in any respect, finding the plaintiff to be "manipulative" during the examination. *Id.* Further, there were no noted objective signs of nystagmus or disequilibrium to support the plaintiff's claims of vertigo. *Id.*

In short, for at least a six-year period between 2006 and the date of the accident suffered in 2012, there are no complaints in the plaintiff's medical records of his having suffered any seizures. In addition, for at least a 15-month period preceding the accident, there are no complaints of dizziness or light-headedness. As Dr. Jason Collins notes, whereas the plaintiff has occasionally complained regarding bouts of dizziness, this symptom can be caused by a number of factors, "including medication, hunger strikes, dehydration and hypertension," and the plaintiff has not associated his complaints of intermittent dizziness with any complaint regarding

seizures.  *See* R. Doc. 51-6 at p. 6.  The medical records show that the plaintiff's sporadic complaints of dizziness were related to things such as eating beans, falls from standing due to his back tightening that resulted in minor head injuries, hunger strikes, and being sprayed with a chemical agent.  *See* R. Doc. 53, bates p.334, 343, 361, 487, 1151, 1159, and 1165.

Regarding the plaintiff's duty status, Dr. Collins notes that beginning in 2006, the plaintiff has been determined to be able to perform regular duty at LSP, with some restrictions intermittently imposed because of complaints of neck or back pain and with restrictions imposed during the summer months in light of his greater heat susceptibility because of his prescribed medications.  *Id.*  In December, 2012, a permanent duty status was approved, calling for "regular duty with restrictions: squad A, no kitchen duty, no sports, no hobby craft, no rodeo."  *Id.*  This duty status has been deemed to be appropriate for his condition and complaints after examination by several physicians detailed in over 1200 pages of medical records.  *Id.*  See also R. Doc. 53.

The plaintiff has presented no evidence other than a history of a head injury and resulting seizures which were asymptomatic for several years prior to the complained of fall in August, 2012, and continued to be so thereafter.  The evidence submitted by the plaintiff does not show deliberate indifference to his serious medical needs on the part of the defendants.  The evidence in the record is to the contrary.  Based upon the foregoing and upon the plaintiff's failure in this case to designate specific evidence in the record of sufficient caliber and quantity to create a genuine issue for trial, the Court concludes that the defendants' motion is well-taken and that, on the record before the Court, the defendant is entitled to summary judgment as a matter of law.

## RECOMMENDATION

It is recommended that the plaintiff's cross-motion for summary judgment (R. Doc. 50) be denied and that the defendants' cross-motion for summary judgment (R. Doc. 51) be granted,

dismissing the plaintiff's claims asserted against the remaining defendants, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on January 26, 2016.

_____
**RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE**